CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Wistar.Wilson@usdoj.gov

Attorneys for United States of America

FILED

Jun 27 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-mj-70767-MAG |
| Plaintiff, | MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR A DETENTION HEARING AND FOR PRETRIAL DETENTION OF DEFENDANT JOHN MOYE |
| v. | |
| JOHN THOMAS MOYE, | |
| Defendant. | Date: June 27, 2025<br>Time: 10:30 a.m.<br>Judge: The Honorable Thomas S. Hixson |

## I. INTRODUCTION

The United States has charged Defendant John Moye ("Defendant") by criminal complaint with two counts of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). On November 23, 2024, members of the San Francisco Police Department ("SFPD") found Defendant in his vehicle in possession of a loaded semiautomatic privately manufactured firearm ("PMF") or "ghost gun" containing two rounds of ammunition, a loose shot shell, and firearms accessories, parts, and kits used for constructing firearms. During his November 23, 2024 arrest, Defendant provided a false name to law enforcement and subsequently admitted to manufacturing firearms for sale. A subsequent search of Defendant's bedroom on December 2, 2024 revealed an additional 160 rounds of ammunition.

Defendant has incurred at least four felony convictions, including for firearms offenses, and has a substantial history of non-compliance on supervision and failures to appear.

The Court should detain Defendant because he poses a serious risk of flight, he is not amenable to supervision, and no conditions will reasonably assure the safety of the community or his appearance in court if he is released.

## II.   BACKGROUND

Defendant had his initial appearance in federal court on June 25, 2025.  The government moved for detention based on danger to the community and risk of non-appearance, *see generally*, 18 U.S.C. § 3142, arguing that it is entitled to a pretrial detention hearing under both (1) 18 U.S.C. § 3142(f)(1)(E) because the offense "involves the possession . . . of a firearm" and (2) 18 U.S.C. § 3142(f)(2)(A) because this case involves "a serious risk that [Defendant] will flee."  The government proffered that although Defendant was charged with being felon in possession of ammunition—not possession of a firearm—his offense conduct nevertheless involved the possession of a ghost gun containing the charged ammunition and thus "involve[d] the possession . . . of a firearm." *See* 18 U.S.C. § 3142(f)(1)(E).  The government also proffered that Defendant's numerous failures to appear made him a demonstrated and serious flight risk.

Defendant argued both that the government was not entitled to a detention hearing and that Defendant should be released pending trial.  The Court held that the government was entitled to a detention hearing, and at the parties' request, set the hearing for June 27, 2025.  The Court invited the parties to submit briefing regarding their respective positions on whether the government is entitled to a detention hearing.

For the reasons articulated below, the Court should hold a detention hearing and should order that Defendant be detained pending trial.

## III.   THE COURT SHOULD HOLD A DETENTION HEARING

The Court should hold a detention hearing because this case involves a felony that "involves the possession . . . of a firearm" and involves "a serious risk that [Defendant] will flee," either of which is grounds for holding a detention hearing. *See* 18 U.S.C. § 3142(f)(1)(E) and 18 U.S.C. § 3142(f)(2)(A).

**A. This case involves the possession of a firearm under 18 U.S.C. § 3142(f)(1)(E).**

In determining whether the criteria articulated in 18 U.S.C. § 3142(f)(1)(E) are satisfied, the Court is permitted to look beyond the elements of the charged offense to the details of the offense conduct. *Watkins*, 940 F.3d at 166. In *Watkins*, a panel of the Second Circuit Court of Appeals held that the government—which charged the offense of felon in possession of ammunition—was entitled to a detention hearing on two alternate grounds: first, that the crime of felon in possession of ammunition under 18 U.S.C. § 922(g)(1) was categorically a "crime of violence" under 18 U.S.C. § 3142(f)(1)(A),[1] and second, that defendant Watkins's conduct in that particular case "plainly involved the use of a firearm" under 18 U.S.C. § 3142(f)(1)(E) when he "discharged no fewer than nine bullets from an illegally possessed firearm." 940 F.3d at 164.

In reaching its latter holding, the Second Circuit in *Watkins* rejected Watkins's argument that in order to satisfy § 3142(f)(1)(E), the charged offense must have as an element the use or possession of a firearm. *Id.* at 157. The panel considered statutory construction and the legislative history of § 3142(f)(1)(E) to conclude, "[T]he phrase 'that involves' in § 3142(f)(1)(E) warrants a conduct-specific inquiry in which the judicial officer may look beyond the elements of the charged offense to consider the actual conduct underlying the arrestee's charged offense." *Id.* at 167. The panel explained, "[T]he statute's context—both textual and historical—makes clear that Congress intended the word 'involves' to have a broader and more permissive meaning in § 3142(f)(1)(E) than in the prefatory language to § 3142(f)(1)." *Id.* at 166.

Many district courts have adopted the holding and reasoning in *Watkins* that in determining whether the criteria in § 3142(f)(1)(E) are satisfied, a court may look beyond the elements of the charged conduct and consider the details of the offense conduct in a particular case. *See, e.g.*, *United States v. Elizondo*, No. 4:24-CR-00157-002, 2024 WL 1546488, at *3 (S.D. Tex. Apr. 9, 2024) (citing and discussing *Watkins* and holding that the defendant's § 922(g)(1) felon in possession of ammunition case

---

[1] Unlike in the Second Circuit, in the Ninth Circuit, the offense of being a felon in possession of a firearm under 922(g)(1) is not a "crime of violence" for purposes of the Bail Reform Act. *See United States v. Twine*, 344 F.3d 987, 987-88 (9th Cir. 2003) (acknowledging circuit split). Therefore, the government does not argue that the closely related offense of being a felon in possession of ammunition under § 922(g)(1) is a "crime of violence" under § 3142(f)(1)(A).

involved the possession of a firearm under § 3142(f)(1)(E) such that the government was entitled to a detention hearing); *United States v. Chokr*, No. 23-20037, 2023 WL 375336, at *6 (E.D. Mich. Jan. 24, 2023) (same, in case charging knowing provision of a false statement during the attempted acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) where defendant held three firearms for nearly four minutes, raised two of them in shooting positions, and walked around a store with one of them, and citing other similar cases); *United States v. Syed*, 634 F.Supp.3d 1036 (D. N.M. 2022) (same, where offense was knowingly making a false statement on an ATF form in connection with federal firearms licensing, in violation of 18 U.S.C. § 924(a)(1)(A)).[2]

The government urges the Court to adopt the reasoning set forth in *Watkins* and echoed in numerous district court opinions regarding its interpretation of § 3142(f)(1)(E) and look beyond the elements of the charged offense in this case—felon in possession of ammunition, in violation of § 922(g)(1)—to the details of offense conduct. In the instant case, Defendant's undoubtedly possessed a firearm, and not in an incidental or tangential way relative to the charged offense; some of the charged ammunition was loaded into the firearm that he was carrying on his person when SFPD officers encountered him on November 23, 2024. Other ammunition was located in the vehicle that contained an additional firearm and firearms kits. Looking to the details of the offense conduct comports with the purpose of inquiry under the Bail Reform Act to assess dangerousness. It also avoids the illogical result of having completely different outcomes in situations where defendants are otherwise identically situated from a dangerousness perspective—they both possess a loaded firearm—but one is a ghost gun and one is a firearm from a known manufacturer located outside the state of California. As the Court is aware, typically only possession of the latter can be charged federally under 18 U.S.C. § 922(g)(1). Under Defendant's read of § 3142(f)(1)(E), the government would be entitled to a detention hearing only in the case where felon in possession of a firearm was charged under §922(g)(1).

Because the reasoning in *Watkins* regarding its interpretation of § 3142(f)(1)(E) is both sound and persuasive, and because Defendant's offense conduct involved his possession of a firearm, the Court

---

[2] Even the district court opinion cited by Defendant in support of his motion opposing a detention hearing concludes that "'[i]volves' is at least broad enough to allow a court to consider the conduct of the offense charged in the case." *United States v. Abrego*, No. 3:25-CR-00115-1, 2025 WL 1727738, at *9 (M.D. Tenn. June 22, 2025).

should find that the government is entitled to a detention hearing under §3142(f)(1)(E).

**B. This case involves a serious risk that Defendant will flee under 18 U.S.C. § 3142(f)(2)(A).**

For the reasons articulated during Defendant's initial appearance and as further set forth in Section VI below, Defendant poses a serious risk of flight. Thus, the Court should find that the government is entitled to a pretrial detention hearing under 18 U.S.C. § 3142(f)(2)(A).

## IV. LEGAL STANDARDS FOR PRETRIAL DETENTION

Under the Bail Reform Act of 1984, a court must order a defendant detained if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is required where a defendant is either a flight risk or a danger to others; it is not necessary to prove both. *See United States v. Montamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Risk of flight must be shown by a preponderance of the evidence, whereas a finding of dangerousness requires support by clear and convincing evidence. *See id.*; 18 U.S.C. § 3142(f)(2)(B). "'[D]anger' does not only refer to physical violence, but can apply to any likely conduct that will hurt the community, i.e. continued criminal activity." *United States v. Flores*, 856 F. Supp. 1400, 1402 (E.D. Cal. 1994) (citing with approval the standard used to evaluate danger to the community in *United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990)).

In evaluating whether the pretrial detention standard is met, the Court must consider relevant statutory factors, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Involvement of firearms in the offense, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings, are also among the factors to be considered as part of the foregoing analysis. *See id.* These factors weigh in favor of detention.

## V. DEFENDANT IS A DANGER TO THE COMMUNITY

The nature and circumstances of the charged offense, the weight of the evidence, Defendant's

history with substance abuse, his past criminal conduct, and his poor track record on supervision, demonstrate by clear and convincing evidence that he poses a danger to the safety of the community that cannot be mitigated by conditions of pretrial release.

**A. The offense conduct is dangerous and supported by strong evidence.**

On November 23, 2024, SFPD officers searching to locate Defendant to arrest him on two outstanding out-of-county arrest warrants identified an individual they believed to be Defendant sleeping in the driver's seat of a gold Mitsubishi Galant (the "Mitsubishi) parked on Hyde Street in San Francisco, California. Another individual, later identified as PERSON 1, appeared to be asleep in the front passenger seat. Officers knocked on the car window and made contact with the individuals in the Mitsubishi. Defendant falsely identified himself to SFPD as "J******* D. M********" with a date of birth of "December **, 19**."

While speaking with Defendant, an officer saw in plain view a shot shell on the floor near Defendant's feet inside the vehicle, at which point he ordered Defendant to get out of the vehicle. As Defendant did so, another officer saw him drop a black semi-automatic pistol from his body near his rear waistline. The firearm landed on the driver's seat. It was subsequently determined to be a ghost gun loaded with two rounds of Winchester 9mm luger ammunition.

The officers asked Defendant if he was John Moye, and Defendant confirmed that he was. Officers then searched the Mitsubishi and found a black bag containing numerous government-issued identification cards and debit/credit cards in the names of at least thirteen people other than MOYE and PERSON 1, shaved keys, a binder with blank checks, miscellaneous paperwork consisting of mail, DMV paperwork, money orders, and checks, as well as a stolen California license plate. Officers also located in the truck a fanny pack containing a (1) a stripped lower receiver with a Bishop Defense slide; (2) two polymer lower receivers; and (3) numerous firearms parts and accessories used to build firearms, including one suspected complete lower receiver parts kit, two suspected incomplete lower receiver parts kits, a rifle front sight, a trigger, a slide release, and a front sight tool.

Officers transported Defendant to the police station, where they read him his *Miranda* rights. After confirming that he understood his rights, Defendant provided several relevant statements, including (1) that he was in possession of the black firearm under his left leg inside the Mitsubishi and

that it was a "Polymer 80 ghost gun" that he had manufactured, (2) that he manufactures firearms and sells them for approximately $800 each, (3) that he has been addicted to fentanyl for the past 6-7 years, (4) that he carries a firearm for protection, and (5) that he is the owner of the Mitsubishi. He also identified for SFPD officers the bedroom in his apartment on Hyde Street that he shared with his girlfriend.

Following Defendant's arrest, SFPD officers obtained a search warrant for Defendant's residence on Hyde Street in San Francisco. When they executed it on December 2, 2024, officers located an additional 160 rounds of ammunition in the closet of the bedroom Defendant shared with his girlfriend.

As provided below, Defendant is a felon and is not legally permitted to possess ammunition. He was carrying a loaded semi-automatic firearm on his person—ostensibly near his waistline, within easy reach—in his vehicle when SFPD officers found him, reflecting a high level of readiness to engage in physical violence. He also admitted to manufacturing that firearm and to building others for sale, consistent with his having firearms kits and parts in his vehicle. Manufacturing ghost guns poses a significant danger to the community because ghost guns are difficult to trace and are therefore often sought out and purchased by individuals who are not lawfully able to possess them.

The evidence that Defendant violated 18 U.S.C. § 922(g)(1) – Felon in Possession of Ammunition is strong: Defendant admitted to possessing the loaded firearm containing ammunition that was located during his November 23, 2024 arrest, and BWC shows the shot shell in plain view before SFPD officers seized it, as well as the firearm on the driver's seat immediately after Defendant dropped it. BWC likewise shows officers locating the bag of ammunition in Defendant's bedroom on December 2, 2024.

**B. Defendant's criminal history, continued criminal conduct, and pattern of offending while under supervision underscore Defendant's lack of amenability to supervision and dangerousness.**

Based on Defendant's criminal history and the conduct described above, the government has significant concern that Defendant will continue to engage in criminal activity and endanger the community if the Court does not detain him pending trial.

A review of Defendant's records reveals a lengthy criminal history with several convictions in

recent years, including felony convictions and convictions for firearms-related offenses. These include felony convictions for the following: a 2022 conviction for Offer/Etc. False/Forge Instrument File (Cal. Pen. Code § 115(a)); a 2022 conviction for Felon/Addict in Possession of a Firearm (Cal. Pen. Code § 29800(a)(1)); a 2020 conviction for Post Release Community Supervision Violation (Cal. Pen. Code § 3455); and a 2018 conviction for Manufacture/Etc. Short-Barreled Rifle/Shotgun (Cal. Pen. Code § 33210). Defendant has recent misdemeanor convictions for Vandalism in 2022 (Cal. Pen. Code § 594(b)(1)) and Manufacture/Sale/Possess Zip Gun in 2017 (Cal. Pen. Code § 33600). In addition, Defendant's mother currently has a restraining order against him after Defendant shoved her in 2021, when she was approximately 67-68 years old.

Defendant's criminal history also evidences a poor track record of compliance with terms of supervision. In addition to his conviction for violating Post Release Community Supervision, it appears Defendant has numerous (at least eight) arrests or charges for violating probation or Post Release Community Supervision as an adult. Per U.S. Pretrial Services's report and Defendant's own admissions during his November 23, 2024 arrest, he also appears to have significant substance abuse issues. These factors suggest Defendant is not amenable to supervision and will continue to engage in criminal conduct if he is not detained pending trial.

## VI.   THERE IS A SERIOUS RISK THAT DEFENDANT WILL FLEE AND FAIL TO APPEAR IN COURT

Defendant's record, suspected unlawful possession of third party Personally Identifiable Information ("PII"), and attempt to evade law enforcement by falsely identifying himself to SFPD officers on November 23, 2024 evidence that Defendant is a serious flight risk and establish by a preponderance of the evidence that no condition or combination of conditions can mitigate the risk that Defendant will fail to appear in court as required.

Defendant's criminal history records reflect a history of repeated failures to appear in court. From 2017 to 2021, it appears that six bench warrants were issued for him in connection with cases against him in state court, in January 2017, November 2017, October 2018, March 2020, June 2021, and August 2021. When SFPD encountered Defendant in connection with the instant offense in November 2024, he had two outstanding warrants, including one warrant for a "[Failure to Appear] probation

violation" out of Stanislaus County.

Evidence found during Defendant's arrest on November 23, 2024 revealed Defendant to be in possession of a large quantity of third party PII and suggested that he may be involved in identity theft-related offenses. During Defendant's arrest, SFPD located in the black duffle bag from the trunk of the Mitsubishi numerous cards—mostly government-issued identification cards, driver's licenses (two of which appeared to be fake), and credit/debit cards—in the names of thirteen people other than Defendant and PERSON 1, in addition to shaved keys (known to law enforcement to be used as burglary tools), blank checks, and DMV paperwork in third parties' names. A preliminary follow-up investigation revealed police reports identifying at least two of those thirteen people as victims of identity theft.

Defendant demonstrated his willingness to attempt to evade law enforcement and make unlawful use of third party Personally Identifiable Information when he falsely identified himself to SFPD on November 23, 2024 with the name and birth date of another real person, J******* D. M********.

Because of the foregoing, the conventional means of mitigating risk of flight—requiring surrender of Defendant's travel documents or enjoining him from obtaining new ones—would be ineffective. No conditions can mitigate Defendant's significant risk of non-appearance, as he has the motive and means to flee the jurisdiction and thwart apprehension by law enforcement.

## VII. CONCLUSION

For the foregoing reasons, the Court should find that the government is entitled to a detention hearing under 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A) and order that Defendant be detained pending trial.

DATED:   June 27, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

___/s/ E. Wistar Wilson_____
E. WISTAR WILSON
Assistant United States Attorney